**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KONG PHENG LEE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:18-cv-1208-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

　　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 8).

　　　　At a hearing on October 1, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

**A. Dr. Sharma's Opinion**

Plaintiff first challenges the ALJ's opinion on the ground that "[t]he ALJ erred by failing to follow the regulations in weighing the opinion evidence in this matter, improperly rejecting the opinion of Plaintiff's treating physician, Dr. Sharma, without setting forth specific and legitimate reasons."  (A.R. 10).[1]

The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)-(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).  Dr. Sharma's opinion is contradicted by State Agency physicians.  Accordingly, the Court looks to whether the ALJ provided specific and legitimate reasons that are supported by substantial evidence and whether the ALJ set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings.

The ALJ provided the following reasons for giving "[n]o significant weight" to the

---

[1] The ALJ's initial decision was reversed and remanded because the ALJ did not initially address Dr. Sharma's opinion.  (A.R. 637 ("In this case, the Court finds that the ALJ erred in ignoring Dr. Sharma's opinion regarding Plaintiff's functional limitations, and providing no explanation for rejecting that opinion.")).

opinion of Dr. Sharma:

> No significant weight can be accorded this conclusory check box form. The opinion of a treating physician or psychologist concerning the nature and severity of an impairment is entitled to appropriate consideration pursuant to SSR 96-2p, that is, if it is well-supported and not internally inconsistent or inconsistent with other pertinent clinical evidence. However, speculation as to employability carries no valuable probative weight, and the ultimate determination of disability is specifically reserved to the commissioner pursuant to SSR-96-5p. Notably, there is no indication in the record that the claimant has been advised to elevate his legs. In addition, physical examinations findings note gout flareups occurring less than once per month, that were mild in nature, and oftentimes did not reveal any objective findings of any abnormalities (see Exhibit 21F).

(AR 576).

In a vacuum, without looking to the rest of the opinion, it is not clear whether this reasoning is legally sufficient. It is true that the opinion is in a conclusory check box form. While it includes a list of diagnoses and symptoms, it does not connect the functional limitations to specific observations or explanations. This reason by the ALJ is thus relevant, especially when there are contradictory medical findings from an examining physician, but is not determinative. 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Additionally, although Dr. Sharma includes functional limitations, which are permissible, Dr. Sharma also included speculation about employability by writing "unable to work" in response to two of the questions on the questionnaire. Moreover, the ALJ's observation that there was no indication in the record that the Plaintiff has been advised to elevate his legs is also true, which casts some doubt on Dr. Sharma's opinion that Plaintiff will need to elevate his legs for more than 50% of the working day. (A.R. 553). Regarding the frequency of gout flare ups, the cited treatment notes do not indicate the frequency of flare-ups, although the ALJ discusses this issue more extensively earlier in the opinion and the parties each cited portions of the record with differing reports of the frequency of such flare-ups. (A.R. 572). Similarly, the mildness of the flare-ups and normal objective findings do not appear to be addressed in the cited exhibit, but are discussed elsewhere in the opinion. (A.R. 571-572).

The Court also evaluated whether the ALJ set out a detailed and thorough summary of the

facts and conflicting clinical evidence, stating her interpretation thereof, and made findings. The ALJ satisfied this requirement. The ALJ gave a very detailed summary of the clinical evidence, including noting inconsistencies. For example, the ALJ noted the inconsistencies regarding Plaintiff's use of a cane. (A.R. 571-72 (regarding his testimony that "[h]e always uses a cane"); (A.R. 575 ("Although the claimant came in using a cane, he appeared to be able to walk back and forth across the room stably without it."). The ALJ compared objective findings to Plaintiff's complaints in detail. (A.R. 572 ("Treatment records in 2013 show ongoing complaints of pain due to gout (Exhibit 14F). However, physical examinations have yielded few objective findings (i.e., no joint swelling, deformity, or edema (Exhibit 14F, pp. 3, 5, 17, 18, 22, 23, 33), decreased swelling of the right knee and improved swelling of the right ankle (Exhibit 14F, p. 13), and full range of motion of the knees (Exhibit 14F, p. 33)."). The ALJ described how Plaintiff's symptoms responded to medication. (A.R. 572 ("The records also show evidence of noncompliance with medications for gout with increased symptoms. For example, in June of 2011, the claimant ran out of medications and did not have them refilled. He experienced a flare-up of gout with increased pain and swelling . . . ."). The ALJ also reviewed in depth the contradictory findings of the consultative examiner, who concluded that "claimant could stand and walk up to 6 hours, and sit with no limitations." (A.R. 575). The ALJ also evaluated the contradictory findings of the non-examining consultative examiners and discussed why she found them credible. (A.R. 576).

After consideration of the opinion as a whole, the Court finds that the ALJ provided legally sufficient reasons for the weight given to Dr. Sharma, and for giving more weight to the other physicians who contradicted Dr. Sharma's opinion.

### B. Subjective Symptom Testimony

Plaintiff next argues that "[t]he ALJ erred by failing to include work-related limitations in the RFC consistent with Plaintiff's flares of gout for the period prior to April 18, 2017." (ECF No. 16, at p. 1). Plaintiff's summary of argument makes clear that Plaintiff is challenging the RFC to the extent it did not include limitations consistent with Plaintiff's own subjective symptom testimony. (ECF No. 16, at p. 15).

As to subjective testimony, the Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

At one point, the ALJ stated as follows regarding Plaintiff's subjective symptom testimony:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with evidence of record. The above residual functional capacity assessment, incorporates certain limitations that are well supported by the medical evidence of record.

(A.R. 577). This explanation alone is insufficient, and Plaintiff asks the Court to reject the reasoning on this basis.

However, the ALJ very extensively examined Plaintiff's symptom testimony elsewhere in her opinion. She stated elsewhere, "As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not supported by the objective evidence." (A.R. 572). She repeats this again later in the opinion referring to "for the reasons explained in his decision." (A.R. 573). The ALJ then extensively compared Plaintiff's testimony to the objective evidence, identified contradictions in his testimony, and cited evidence of malingering. (A.R. 574 ("the physician administering the testing

did not feel these were valid results"); A.R. 574 ("his account of traumatic events in Laos is lacking plausibility in his view"); A.R. 575 ("Contrary to what he reported to Dr. Portnoff 7 days earlier, the claimant noted that he could do light cooking, and some cleaning. . . . He then ambulated back leaning a bit with the cane improbably far out in front of him and bending at the lumbar back to ambulate. . . . "Although the claimant came in using a cane, he appeared to be able to walk back and forth across the room stably without it."); A.R. 577 ("[T]he claimant was very vague and somewhat evasive during examination with possibility of exaggeration raised.").

The Court finds that the ALJ's reasons for discounting Plaintiff's subjective opinions were based on evidence of malingering and were clear and convincing.

### C. Conclusion

For the reasons set forth above, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **October 3, 2019**  /s/ *Eric P. Gross*

UNITED STATES MAGISTRATE JUDGE